| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>------------------------------------------------------------------------x<br>In re:<br><br>EAST HUDSON LEVEL FLOORING SYSTEMS INC.,<br><br>                                                        Debtor.<br>------------------------------------------------------------------------x<br>DARO METRO NYC INC.,<br><br>                                                      Plaintiffs,<br><br>-against-<br><br>RCB1 NOMINEE LLC, TISHMAN CONSTRUCTION CORPORATION, PINNACLE INDUSTRIES II, LLC, FEDERAL INSURANCE COMPANY, EAST HUDSON LEVEL FLOORING SYSTEMS INC., EAST HUDSON SELF LEVELING INC., EAST HUDSON ENTERPRISES, INC. and MICHAEL FALZARANO,<br><br>                                                        Defendants,<br>------------------------------------------------------------------------x<br>EAST HUDSON LEVEL FLOORING SYSTEMS INC.,<br><br>                                                        Plaintiffs,<br><br>-against-<br><br>RCB1 NOMINEE LLC, TISHMAN CONSTRUCTION CORPORATION & PINNACLE INDUSTRIES II, LLC,<br><br>                                                        Defendants,<br>------------------------------------------------------------------------x | NOT FOR PUBLICATION<br><br><br><br>Chapter 11<br><br><br>Case No. 19-22812 (DSJ)<br><br><br><br><br><br><br><br><br><br>Adv. Proc. No. 19-8256 (DSJ)<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Adv. Proc No. 19−8296 (DSJ) |

## DECISION AND ORDER PARTLY DENYING AND PARTLY GRANTING DEFENDANT PINNACLE'S MOTION FOR PARTIAL SUMMARY JUDGMENT

      Before the Court is the motion for partial summary judgment of defendants Pinnacle Industries II, LLC and Federal Insurance Company. Pinnacle Industries II, LLC served as an upper-tier subcontractor responsible for concrete superstructure work on a Manhattan high-rise residential project, and Federal Insurance Company served as its surety. This decision refers to

1

the movants as "Pinnacle." They seek summary judgment against claims brought by lower-tier subcontractor East Hudson Level Flooring Systems Inc. ("East Hudson," "Debtor," or "Debtor East Hudson"), a debtor in bankruptcy before this Court. The parties agree that Pinnacle and East Hudson made an oral contract under which East Hudson performed project work involving the pouring of self-leveling material; Pinnacle and East Hudson had worked together similarly on more than 20 previous projects.

Debtor East Hudson seeks to recover unpaid amounts that it says are due to it, mainly stemming from Pinnacle's refusal to pay a February 2019 invoice for approximately $441,000. That invoice came from East Hudson Self Leveling Inc. ("Self Leveling"), a separate, non-debtor entity owned by the principals of the Debtor. Pinnacle seeks summary judgment against Debtor East Hudson on all causes of action that arise from Pinnacle's nonpayment of the invoice. Pinnacle contends, in essence, that Debtor East Hudson stopped performing on the contract no later than the fall of 2018 when it stopped submitting invoices, with non-debtor Self Leveling submitting monthly invoices instead, each of which referred to Self Leveling as the contractor entitled to payment. Further, Pinnacle contends, in a meeting on February 25, 2019, the individuals who serve as principals of both Debtor East Hudson and non-debtor Self Leveling anticipatorily rejected the contract in full by informing Pinnacle that they lacked the resources to complete the project. In Pinnacle's view, any possible remaining contractual rights of either Debtor East Hudson or non-debtor Self Leveling disappeared as of that date. Pinnacle thus argues Debtor East Hudson has no right to collect on the disputed invoice because no contract existed between the Debtor and Pinnacle as of the date of the invoice. Pinnacle also argues that Debtor has no quasi-contract remedy because a separate entity, Self Leveling, had taken over the contract and, by extension, any rights to payment for work under the contract.

The Court concludes that fact issues require a trial on three of the first four contested causes of action, in each of which Debtor East Hudson asserts entitlement to payment of the unpaid invoice. Pinnacle and Debtor East Hudson present materially divergent sworn accounts of critical facts. First, although Self Leveling issued the final six invoices, with those invoices labeling Self Leveling as "contractor," East Hudson presents sworn statements that, despite the formal change in the billing party, East Hudson remained responsible for all work on the contract and in fact performed all work on the project, while Self Leveling had no employees and did no work. Second, one of East Hudson and Self Leveling's shared principals gives sworn testimony that they changed the billing entity because of the request of a key supplier but never amended or terminated East Hudson's contract with Pinnacle. Third, neither party has presented testimony or sworn statements identifying any conversation or communication in which the parties explicitly terminated or amended Debtor East Hudson's oral contract with Pinnacle other than one conversation on February 25, 2019. The parties present inconsistent sworn accounts of this meeting, so resolving any claim or defense based on it compels a trial.

Thus, fact disputes requiring a trial remain as to East Hudson's asserted entitlements under the parties' original contract, or, in the alternative, as to East Hudson's claims for recovery on theories of unjust enrichment or quantum meruit based on Debtor East Hudson's insistence that it performed all work on the project and incurred substantial expenses, all to Pinnacle's benefit. Pinnacle is entitled, however, to summary judgment on Debtor East Hudson's claim for "account stated," because there is no dispute that the entity that submitted the unpaid invoice was Self Leveling, not Debtor East Hudson.

Pinnacle's motion also challenges Debtor East Hudson's fifth and sixth causes of action. The Court denies Pinnacle's motion as to the fifth cause of action because that portion of the

3

motion rests on East Hudson's asserted anticipatory breach, which allegedly occurred at the February 25, 2019, meeting and as to which a triable dispute of fact exists. The Court grants the motion as to the sixth cause of action for consequential damages because East Hudson abandoned that claim by failing to oppose that portion of Pinnacle's motion.

## BACKGROUND

### Key Undisputed and Disputed Facts

The following facts are uncontested.[1] Debtor East Hudson and Pinnacle formed an oral contract under which East Hudson was to perform floor self-leveling work on a Manhattan residential highrise construction project for which Pinnacle held the broader responsibility for all concrete superstructure work. ECF No. 70 ("Undisputed Facts") at ¶¶ 1-2. East Hudson and Pinnacle had worked together similarly on more than 20 prior projects. ECF No. 67 (the "Falzarano Decl.") at ¶ 5; ECF No. 63-2 (the "Mitrione Decl.") at ¶ 6. East Hudson performed and billed Pinnacle for substantial work on the project in 2018, and, despite various issues arising, Pinnacle paid all five of East Hudson's invoices submitted through August 7, 2018, the fifth invoice being for the period ending July 31, 2018. *See* ECFs No. 63-11 to 63-20.

The sixth invoice Pinnacle received, dated September 14, 2018, names non-debtor Self Leveling as the contractor. ECF No. 63-23. Self Leveling is a distinct legal entity. *Compare* ECF No. 63-21 *with* ECF No. 63-22. On September 18, 2018, Pinnacle paid that invoice, so on or before that date Pinnacle learned that the principals of the Debtor had formed Self Leveling as a new company. *See* ECF No. 63-28.

Over the period starting September 14, 2018, and ending February 25, 2019, Pinnacle received six invoices for self-leveling work on the project; all were issued in the name of non-

---

[1] Unless otherwise indicated, citations to the docket refer to the docket in Case 19-08296.

4

debtor Self Leveling as "contractor" for work done on the project. *See* ECFs No. 63-23 to 63-27 and 63-36. Pinnacle paid the first five of these by checks made out to Self Leveling, *see* ECFs No. 63-28 to 63-32, but Pinnacle did not pay the sixth, ECF No. 63-36 ("Payment Requisition No. 11"); *see* Mitrione Decl. at ¶ 91. All eleven invoices that Pinnacle received in connection with the project explicitly stated "The AMOUNT CERTIFIED is payable only to the Contractor named herein." *See* ECFs No. 63-11 to 63-15, 63-23 to 63-27 and Payment Requisition No. 11. For each payment it made, Pinnacle complied with these instructions. *See* ECFs No. 63-16 to 63-20 and 63-28 to 63-32 (the checks Pinnacle issued).

Although Pinnacle contends that the shift in the entity formally billing Pinnacle for project work establishes that Debtor East Hudson's contract with Pinnacle terminated, East Hudson disagrees, and East Hudson supports its position with the declaration of one of its principals, Michael Falzarano. That declaration includes the following sworn statements: Allegedly due to defects in Pinnacle's planning or work, "East Hudson [not Self Leveling] was forced to expend $1,000[,]210.21 in additional labor and materials" [Falzarano Decl. at ¶ 10], including approved change orders numbers 74 and 84 for work done on December 6, 2018 and during March 2018 through January 2019, respectively, some of which work post-dated the date Pinnacle asserts Debtor East Hudson ceased serving as a subcontractor on the project, *id.* at ¶¶ 11-12; "In September of 2018, I notified Pinnacle that East Hudson's principals had created Self Leveling [but at] no point did I tell Pinnacle that Self Leveling would be taking over all work on the Project," *id.* at ¶ 33; "Self Leveling never performed any work on the Project" and "Self Leveling never entered into an agreement or contract with Pinnacle," *id.* at ¶¶ 36-37; and "The full amount requested by East Hudson through this Payment Requisition No. 11 remains unpaid, outstanding, and due to East Hudson," *id.* at ¶ 43.

5

The parties also dispute what they communicated during a February 25, 2019 conversation that Pinnacle's motion emphasizes. Pinnacle executive Joseph Mitrione contends that Mr. Falzarano informed him during a meeting that day that East Hudson no longer had the financial wherewithal to complete the project and that this asserted notification constituted an anticipatory breach of the parties' contract that excused Pinnacle's continued performance of the contract. *See* Mitrione Decl. at ¶¶ 86-89, 96. Pinnacle further contends that it incurred significant added cost to complete the project using a different self-leveling subcontractor. *See id.* at ¶ 97.

Debtor East Hudson gives an entirely different account of the same conversation, denying that any representative of East Hudson stated they could not or would not complete the project and attesting that the conversation was extremely short and largely consisted of Pinnacle's principal shouting at them that East Hudson was "done" on the project, thus purporting to terminate East Hudson rather than reflecting a resignation or termination initiated by Debtor East Hudson. *See* Falzarano Decl. ¶¶ 51-55; ECF No. 68 at ¶¶ 7-12; ECF No. 69 at ¶¶ 7-12.

### **The Parties' Legal Arguments**

Pinnacle contends that, no later than September 2018, when non-Debtor Self Leveling began sending invoices on the project in place of Debtor East Hudson, Pinnacle's contract with East Hudson ended and Pinnacle formed a new contract with Self Leveling, either independently or by the Debtor's assignment to Self Leveling of the contract between Debtor and Pinnacle. Assertedly under this new contractual relationship, Pinnacle further contends that non-debtor Self Leveling took over Debtor's responsibilities on the project as of September 2018 when the entity issuing invoices became Self Leveling. Thus, Pinnacle argues, there is no dispute that Pinnacle fully performed its contract with Debtor East Hudson because Pinnacle paid all invoices

6

that Debtor East Hudson sent in its own name. Pinnacle further argues that although admissible evidence may suggest that Pinnacle breached a contract with non-debtor Self Leveling by failing to pay Payment Requisition No. 11, Debtor East Hudson lacks standing to sue for damages caused by such a breach.

Debtor East Hudson responds, backed by sworn statements including the declaration of Michael Falzarano, that the change in the name of the entity submitting invoices was for convenience only and was immaterial to Debtor's entitlements, that Debtor East Hudson continued to incur labor and material costs and perform all work that was billed, that Pinnacle accepted that work, and that Non-Debtor Self Leveling never performed work on the project and never even had any employees. *See* Falzarano Decl. at ¶¶ 33-40. Debtor East Hudson argues that these facts demonstrate that its contract with Pinnacle remained in effect, that Pinnacle knew of and accepted the ongoing work that East Hudson performed with an expectation that it would be paid under the contract albeit with a different formal payee that it chose to designate, and that Pinnacle's failure to pay it for work that it performed both constituted a contractual breach and benefitted Pinnacle to Debtor East Hudson's detriment by allowing Pinnacle to receive the benefit of East Hudson's expenditures and efforts while failing to compensate East Hudson (or anyone else) for the work.

**II. APPLICABLE LEGAL STANDARDS**

Summary judgment is appropriate where the record establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (as made applicable to this Court by Fed. R. Bankr. P. 7056). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (quoting *SCR Joint Venture*

7

*L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). "The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment, and in assessing the record to determine whether there is a genuine issue as to a material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Id.* (quoting *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

New York law applies to the state law claims in this case because the parties cite New York cases or federal cases applying New York law, and "such implied consent is sufficient to establish the applicable choice of law." *Trikona Advisers Ltd. v. Chugh*, 846 F.3d 22, 31 (2d Cir. 2017) (quoting *Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009)). Moreover, the parties are based in New York and the relevant events occurred in New York. No other logical source of applicable law exists.

**III.  ANALYSIS**

The Court concludes that material fact disputes exist and cannot be resolved both as to whether Debtor East Hudson ceased to serve as Pinnacle's subcontractor beginning in August 2018, and as to whether the February 25, 2019 conversation constituted an anticipatory breach by Debtor East Hudson.

First, the sworn statements included in the Falzarano Declaration that this Decision quotes above suffice to create a triable issue of fact as to whether Debtor East Hudson ceased serving as Pinnacle's subcontractor, or forfeited any entitlement to ultimate compensation, by virtue of the shift in September 2018 to the submission of invoices by Self Leveling. This stands regardless of those invoices' inclusion of statements to the effect that Self Leveling was the "contractor" on the project and that payment was required to be submitted to Self Leveling, *see*

ECFs No. 63-23 to 63-27 and Payment Requisition No. 11, which do not eliminate the presence of a material dispute of fact requiring trial. Contrary to Pinnacle's arguments, the Falzarano Declaration does not fail due to inconsistency with facts established through underlying documentation or other objective evidence, because the evidence on which Pinnacle relies, while supporting its position, does not represent an explicit contradiction or concrete fact that cannot be reconciled with East Hudson's position backed by the sworn statements that East Hudson advances.

Meanwhile, the Court cannot square the parties' clashing accounts of the February 25, 2019, without a trial. Pinnacle's letter dated February 26, 2019, *see* ECF No. 63-38, purporting to memorialize its characterization of the prior day's meeting, does not change this. The principals of the Debtor put forth sworn declarations that contradict the letter, *see* Falzarano Decl. at ¶¶ 51-57, ECF No. 68 at ¶¶ 7-8; ECF No. 69 at ¶¶ 7-8, thus creating a dispute of material fact requiring trial to the extent any claims or defenses turn on that meeting.

Translating these observations into holdings specific to the claims upon which Pinnacle's seeks summary judgment, the Court concludes as follows.

**Claim 1: Breach of Contract for Failure to Pay Payment Requisition No. 11**

In determining whether the parties entered into a contractual agreement and what were its terms, one looks to the objective manifestations of the intent of the parties as gathered by their expressed words and deeds, an inquiry that is not dependent on the subjective intent of either party. *Brown Bros. Elec. Contractors v. Beam Constr. Corp.*, 361 N.E.2d 999, 1001 (N.Y. 1977).

Neither party disputes that, at the commencement of the project, Pinnacle and Debtor East Hudson made an oral contract under which East Hudson would perform the project's self-leveling work. Undisputed Facts at ¶ 2. Further, the parties agree that East Hudson and Pinnacle

9

worked together on more than 20 previous projects, which perhaps explains the parties' reliance on an informal oral agreement. Falzarano Decl. at ¶ 5; Mitrione Decl. at ¶ 6.

Pinnacle has produced evidence that could warrant concluding that Pinnacle and non-debtor Self Leveling objectively showed intent to enter an agreement covering work in August 2018 and beyond. Debtor East Hudson sent no invoices to Pinnacle for work done after July 31, 2018, *see* ECF No. 63-15, Pinnacle received invoices made in the name of non-debtor Self Leveling as contractor for all work done thereafter, and Pinnacle wrote checks to Self Leveling as directed by those invoices. *See* ECFs No. 63-23 to 63-32 and Payment Requisition No. 11; *cf. Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 582 (2d Cir. 2006) ("The conduct of the parties in this case demonstrates that the implied-in-fact contract terms called for reimbursement at the equivalent of the Standard Rate, inasmuch as payments were made and accepted without objection at that rate.").

Nevertheless, Debtor East Hudson has presented enough contrary admissible evidence to show a triable question of fact. Debtor presents declarations from its principals attesting that it continued to perform all work under the contract [Falzarano Decl. at ¶¶ 59, 66], that Non-Debtor Self Leveling was a separate corporation created by Debtor's principals that had no employees and did no work but rather was created to accommodate a supplier's request, *id.* at ¶¶ 33-40, and that Debtor continued to perform work under the contract and through agreed change orders even after the asserted September 2018 termination of its contract, *id.* at ¶¶ 10-12. Moreover, although Pinnacle relies on the form of the invoices submitted by non-debtor Self Leveling which refer to Self Leveling as the "contractor" and which state that Self Leveling is the only permitted payee, Pinnacle has not presented testimony or documentation of any explicit written or oral agreement by which Debtor East Hudson relinquished its duties and rights under the original contract.

10

Pinnacle similarly fails to show Self Leveling (an entity controlled by East Hudson's principals) made any agreement to take over the contract in Debtor's place. By contrast, Mr. Falzarano declares under penalty of perjury that Self Leveling did no work and never made any contract with Pinnacle, while Debtor East Hudson did not breach its contract with Pinnacle. *See id.* at ¶¶ 40, 37, 66. Thus, a reasonable trier of fact could find that a contract between Pinnacle and Debtor East Hudson remained in effect and that Pinnacle breached the contract by refusing to pay the disputed Payment Requisition No. 11.

In turn, the existence of this material fact dispute means that Pinnacle cannot prevail on its motion as to Debtor East Hudson's breach of contract claim despite the correctness of its legal observation that a non-party to a contract governed by New York law lacks standing to enforce the agreement in the absence of terms that "clearly evidence[ ] an intent to permit enforcement by the third party" in question. *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009) (quoting *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.* 485 N.E.2d 208, 212 (N.Y. 1985)). The continued existence of the original contract is a disputed question requiring trial. The Court therefore denies Pinnacle's motion for summary judgment as to Claim 1.

**Claim 2: Quantum Meruit**

Debtor East Hudson's second claim proceeds on a theory of quantum meruit, namely, that if the Court were to determine that no contract existed after September 2018 between Pinnacle and Debtor East Hudson, then East Hudson deserved compensation for the work it insists it continued to perform on the project even after the asserted contract termination date. Under the doctrine of quantum meruit, a plaintiff can recover from a defendant for the value of work performed in good faith with an expectation of payment and accepted by the defendant, even in the absence of an applicable and express contractual entitlement. *See AHA Sales, Inc. v. Creative*

11

*Bath Prods., Inc.*, 867 N.Y.S.2d 169, 180 (App. Div. 2008) (citing *Tesser v. Allboro Equip. Co.*, 756 N.Y.S.2d 253, 254 (App. Div. 2003)).

As Pinnacle correctly emphasizes, "[r]ecovery under the theory of quantum meruit is not appropriate where . . . an express contract governed the subject matter involved." *Parker Realty Grp., Inc. v. Petigny*, 929 N.E.2d 387, 387 (N.Y. 2010) (further citations omitted). Pinnacle contends that this doctrinal bar applies here because the project was subject to a contract between Pinnacle on the one hand and some combination of Debtor East Hudson and non-debtor Self Leveling on the other. Either way, in Pinnacle's view, a contract governs the relationship between Pinnacle and the Debtor, such that Pinnacle is entitled to summary judgment.

The Court concludes that the factual disputes described above leave open the possibility that Debtor East Hudson could ultimately recover on a quantum meruit theory. East Hudson presents sworn testimony that East Hudson continued to perform all work as contemplated by its original contract with Pinnacle notwithstanding the shift to invoicing by non-debtor Self Leveling, the separate entity also owned by the principals of Debtor East Hudson. *See* Falzarano Decl. at ¶¶ 59, 33. Pinnacle contends that Debtor East Hudson's contractual entitlements terminated upon the shift to billing by non-debtor Self Leveling, *i.e.*, Debtor has no right to make claims for unpaid work from September 2018 onward, which would include Payment Requisition No. 11. One possible factual finding at trial might be that the billing shift terminated Debtor's contractual entitlements, yet, at the same time, Debtor in fact performed the work in good faith and with an expectation of payment by Pinnacle, with Pinnacle's acquiescence and with no express agreement that Debtor East Hudson was to discontinue work on the project. The available evidence suggests (and does not eliminate the possibility of) that trial outcome, so the Court denies Pinnacle's motion as to Debtor East Hudson's quantum meruit claim.

12

**Claim 3: Account Stated**

To state a claim for an account stated, the plaintiff must plead that: "(1) an account was presented; (2) it was accepted as correct; and (3) debtor promised to pay the amount stated." *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F. Supp. 2d 395, 411 (S.D.N.Y. 2009) (internal quotations omitted). Such a claim requires "an agreement between the parties to an account based upon prior transactions between them." *LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 64 (2d Cir. 1999) (quoting *Chisholm-Ryder Co. v. Sommer & Sommer*, 421 N.Y.S.2d 455, 457 (App. Div. 1979)).

The Court grants Pinnacle's motion for summary judgment as to this cause of action because Debtor East Hudson has advanced no evidence creating a material factual dispute as to whether there existed an "agreement between the parties to an account." *Id.* Debtor East Hudson never presented an "account" to which Pinnacle "agreed" in connection with the approximately $441,000 obligation that East Hudson seeks to collect. The only dispute arises from an invoice presented by non-debtor Self Leveling with an explicit instruction that Pinnacle pay Self Leveling. *See* Payment Requisition No. 11; Mitrione Decl. at ¶ 91. This forecloses any possible claim that Pinnacle failed to pay an "account" presented to it by Debtor East Hudson.

Accordingly, the Court grants Pinnacle's motion as to Debtor's third claim, for account stated.

**Claim 4: Unjust Enrichment**

The Court's analysis of this cause of action tracks its analysis of Debtor's quantum meruit claim. A plaintiff states a claim for unjust enrichment claim when it alleges (1) another party was enriched, (2) at the plaintiff's expense, and (3) it is against equity and good conscience to permit

13

the other party to retain what the plaintiff seeks to recover. *AHA Sales, Inc. v. Creative Bath Prods., Inc.*, 867 N.Y.S.2d 169, 180 (App. Div. 2008) (internal quotations omitted).

Like quantum meruit claims, a party may not maintain an unjust enrichment claim when it simply duplicates or seeks to replace a conventional contract or tort claim. *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012) (further citations omitted).

As with Debtor's quantum meruit claim, existing factual disputes described above leave open the possibility that Debtor East Hudson could recover on an unjust enrichment theory. One of Debtor East Hudson's principals presents sworn testimony that East Hudson continued to perform all work as contemplated by its original contract with Pinnacle notwithstanding the shift to invoicing by and payment to the commonly owned Self Leveling entity. *See* Falzarano Decl. at ¶ 59. Pinnacle contends that Debtor East Hudson's contractual entitlements terminated upon the shift to billing by non-debtor Self Leveling, *i.e.*, East Hudson's contractual entitlement to payment for work on the project ended in September 2018, which long preceded the unpaid Payment Requisition No. 11. The same theory that could prevail on the quantum meruit claim holds true here: evidence exists that could support a finding that the billing shift terminated Debtor's contractual entitlements yet also that Debtor performed the work in good faith and with an expectation of payment by Pinnacle, with Pinnacle's acquiescence and for the benefit of Pinnacle, such that Pinnacle's failure to pay for that work (via the commonly owned non-debtor Self Leveling) unjustly enriched Pinnacle to the detriment of Debtor East Hudson. The Court therefore denies Pinnacle's motion as to Debtor East Hudson's unjust enrichment claim.

**Claim 5: Breach of Contract – Anticipatory Repudiation**

Pinnacle also seeks summary judgment as to Debtor East Hudson's breach-of-contract claim on the ground that East Hudson anticipatorily rejected the contract during a conversation

on February 25, 2019, in which Pinnacle says Mr. Falzarano informed Pinnacle that Debtor and/or Self Leveling no longer had the financial ability to complete the project. *See* Mitrione Decl. at ¶¶ 88-89.

As discussed above, the parties dispute what happened at this meeting. Debtor has presented sworn, admissible declarations attesting that Debtor's representatives never made the statements Pinnacle asserts, and that, instead, Pinnacle's principal immediately confronted Debtor's principals by angrily shouting "You guys are done," with no meaningful discussion during the meeting. *See* Falzarano Decl. at ¶¶ 44, 51-55; ECF No. 68 at ¶¶ 7, 11; ECF No. 69 at ¶¶ 7, 11. Mr. Falzarano denies ever making the admissions that Mr. Mitrione attributes to him. Falzarano Decl. at ¶ 57 ("at no point did I ever utter to Mr. Mitrione any acknowledgment that East Hudson or any other person or entity was not able to meet the scheduling requirements of the Project").

These incompatible accounts present a paradigmatic material dispute of fact requiring trial. The Court denies Pinnacle's motion for summary judgment regarding the issue of anticipatory repudiation.

**Claim 6: Breach of Contract – Foreseeable Damages Included Insolvency**

The Debtor claims that Pinnacle knew the Debtor faced financial ruin if Pinnacle did not pay Payment Requisition No. 11 and that Pinnacle's allegedly wrongful refusal to pay justifies holding Pinnacle liable for the entire loss of the Debtor's enterprise value. *See* ECF No. 31 at ¶¶ 57-62. Pinnacle's motion sought summary judgment as to this claim on grounds including that Debtor East Hudson failed to plausibly allege that Pinnacle's alleged breach caused the consequential damages that Debtor East Hudson asserted and that East Hudson's alleged consequential damages were not reasonably foreseeable when Pinnacle formed its contract with

15

East Hudson. ECF No. 63-46 at Point II(C). Debtor East Hudson's opposition failed to even acknowledge this aspect of Pinnacle's motion, much less respond to it. *See generally* ECF No. 71. As Pinnacle's reply observes, the Court may deem the claim abandoned due to East Hudson's failure to defend its claim in the face of seemingly sound objections by Pinnacle. *See [Jackson v. Fed. Express](), 766 F.3d 189, 198 (2d Cir. 2014)* ("[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned."). Accordingly, the Court grants Pinnacle's motion as to East Hudson's Claim 6 for consequential damages.

**Pinnacle's Cross-Motion for Summary Judgment in its Favor on its Cross-Claims**

Finally, Pinnacle has cross-moved for summary judgment in its favor on its cross-claim that non-debtor Self Leveling breached the parties' contract and therefore owes Pinnacle contract damages. Contrary to Pinnacle's assertion that East Hudson failed to oppose this portion of Pinnacle's motion, East Hudson opposed this request as legally unsound. ECF No. 71 at Point III. As East Hudson succinctly and correctly observes, the parties' dispute concerning the contents of key conversations and facts, including the conversation of February 25, 2019, precludes a grant of summary judgment in Pinnacle's favor on its cross-claims. *Id.*

### CONCLUSION

For the reasons stated above, Pinnacle's motion is DENIED as to Claims 1, 2, 4, and 5; GRANTED as to Claims 3 and 6; and DENIED as to Pinnacle's request for a grant of summary judgment in its favor on its cross-claims for breach of contract.

**So ordered.**

Dated: New York, New York
      June 5, 2024                                             *s/ David S. Jones*
                                                             Honorable David S. Jones
                                                             United States Bankruptcy Judge